IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

CONNIE HILL, individually
and in her capacity as Executrix
of the Estate of Donald Hill, *on behalf of*
*themselves and all others*
*similarly situated,*

        Plaintiffs,

v.                                   Civil Action No. 5:21-cv-00029-JPB

LERETA, LLC,

        Defendant.

## **AMENDED COMPLAINT**

1.    This case involves Defendant's faulty investigation and false reporting that the Plaintiffs had defaulted on their mortgage loan by failing to pay their property taxes. Plaintiffs obtained a reverse mortgage secured by their home and have diligently paid their taxes. Nonetheless, their loan servicer purchased a consumer report from Defendant Lereta, which included property tax payment records it supposedly collected, assembled and evaluated from the County Clerk.

2.    While the tax payment report obviously related to the Plaintiffs and their ability and likelihood to pay their account with the loan servicer, Lereta followed no reasonable procedure to ensure its accuracy. Then, Lereta refused to correct its reporting even after being alerted by the County Clerk and by Plaintiffs. Instead, Lereta's report resulted in the loan servicer accusing Plaintiffs of having a default balance and put Plaintiffs in fear of losing their home. Plaintiffs bring this action to correct their report, and for actual, statutory, and punitive damages, and for costs and attorney's fees, pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3.      Accessing and furnishing consumer reports like the ones Lereta creates is presumptively illegal. The FCRA strictly regulates the trafficking of such information, permitting the exchange of consumer reports for only a set of enumerated purposes, "and no other." *Id.* § 1681b(a).

4.      So the purpose to which the report will be put may be considered, a party seeking to issue a consumer report must first obtain from the party seeking it a certification of the FCRA purpose for the report. *Id.* § 1681e(a). A consumer reporting agency ("CRA") violates the FCRA with each report it issues without such certification.

5.      Here, Lereta issued consumer reports about Plaintiffs and thousands of consumers like them to users like Nationstar without obtaining any certification of permissible purpose. With each report so issued, Lereta violated Section 1681e(a)'s demand that it first obtain a certification of purpose for the report.

6.      Because Lereta never obtains this certification from its users, it therefore has no reason to believe the reports are being obtained for a permissible purpose set forth in the FCRA, 15 U.S.C. § 1681b. Lereta thus routinely, and as a matter of ordinary course, violates the permissible purpose limitations of § 1681b and the requirements of § 1681e(a).

7.      Separately from the individual investigation claims described above, Plaintiffs bring nationwide class claims against Lereta for its failure to have in place reasonable procedures to ensure the maximum possible accuracy of tax-related information it reports and its issuance of consumer reports without obtaining the certification from the users that the FCRA demands. 15 U.S.C. §§ 1681e(a), 1681e(b).

8.     On behalf of a class of nationwide consumers and a subclass of West Virginia residents, Plaintiffs seek statutory and punitive damages for Lereta's classwide violations, as well as their attorneys' fees and costs. 15 U.S.C. § 1681n.

## PARTIES

9.     Plaintiffs Donald and Connie Hill reside in West Virginia and are "consumers" as defined by 15 U.S.C. § 1681a(c).

10.    (a)     Defendant Lereta, LLC (Lereta) is with a principal office in 620 Newport Center Drive, 14th Fl., Newport Beach, CA 92660 and doing business in West Virginia.

(b)     Defendant Lereta is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).  Lereta is regularly engaged in the practice of collecting, assembling and evaluating information regarding consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

(c)     Lereta disburses such consumer reports to third parties under contract for monetary compensation.

## JURISDICTION

11.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which permit the adjudication in State court of claims under the FCRA.

## STATEMENT OF FACTS

***The FCRA Protects Consumer Privacy And Demands That Information Reported Be Accurate***

12.    "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress

adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001).

13.     Congress likewise sought to create common standards protecting the privacy and confidentiality of personal information. Senator Proxmire recognized that the Act was necessitated by the lack of standards stating, "What is disturbing is the lack of any public standards to ensure that the information is kept confidential and used only for its intended purpose." 115 Cong. Rec. 2413 (1969). *See also* 114 Cong. Rec. 24,903 (1968) (remarks of Sen. Proxmire).

14.     The FCRA addressed this concern by creating standards limiting the dissemination of personal information in several important respects. The Act limits the dissemination of consumer reports by a consumer reporting agency to certain designated purposes. *See* 15 U.S.C. § 1681b(a) limiting the disclosure of a consumer report where a consumer reporting agency has reason to believe the information will be used for, *inter alia*, credit transactions, employment applications or the underwriting of insurance.

15.     The Act also creates standards by requiring the person requesting a consumer report from a consumer reporting agency to have a permissible purpose and also to provide a certification attesting to the purpose of the report and stating that the report will be used for no other purpose. 15 U.S.C. § 1681b(f)(2).

16.     Likewise, these same duties and responsibilities apply to resellers of consumer reports. 15 U.S.C. § 1681e(e)(2).

17.     The Act further requires consumer reporting agencies to obtain certifications from users certifying the purposes for which the information was being sought, and certifying that the information will be used for no other purpose. 15 U.S.C. § 1681e(b).

18.     Where the consumer reporting agency or the user fails to provide the required certification and then the consumer reporting agency provides a consumer report to the user, the disclosure of that report lacks the requisite permissible purpose, thereby undermining the intended confidentiality and privacy protections of the FCRA.

19.     Lereta uniformly deprives persons of these crucial protections by failing to obtain or require the mandated certifications stating that the consumer reports issued by Lereta will be used for specified permissible purposes and will not be used for any other purpose.  Absent these protections, Lereta allows users to obtain and use consumer reports for any purpose whatsoever.

20.     Another of Congress's measures in adopting the FCRA, 15 U.S.C. § 1681e(b), "deal[s] with the procedures consumer reporting agencies must follow when collecting and transmitting information. Congress also gave individuals the right to sue reporting agencies for violations of FCRA. *Id.* §§ 1681n, 1681o." *Id*.

21.     It has long been the law – since 1970 in fact – that:

[W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Federal Trade Commission, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.

22.     Section 1681i(a) on the other hand requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through her dispute:

[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . .  of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed

> information is inaccurate and record the current status of the disputed information,
> or delete the item from the file . . .  before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

23.     Section § 1681i(a) imposes "a duty ... to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991).  "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

24.     "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A). Section 1681e(b) sets forth the CRAs' overall duly [sic]:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

25.     Plaintiffs Donald and Connie Hill obtained a reverse mortgage on their home in June 2012 from Nationstar, LLC, d/b/a Champion Mortgage.

26.     Champion was the lender, owner, and servicer of Plaintiffs' reverse mortgage.

27.     Champion hired Lereta, LLC (and Lereta's subsidiary Industry Consulting Group) to collect, assemble, and evaluate information from sources, including by example only the Monroe County, WV tax records, and to furnish a report with such information to Champion.

28.     The Lereta report was furnished for the purpose of determining whether the Plaintiffs were likely or unwilling to pay property taxes.

29.      Lereta specifically offers Reverse Mortgage tax services for lenders such as Champion.

30.     The risk and approval of a reverse mortgage depends in material part upon whether or not the borrower will maintain and pay property taxes on the collateral property during the loan term.

31.     Lereta boasts that "Lereta is the industry's largest tax service vendor, serving over 4,000 lenders" and that "[w]e are experts in **tax and flood**." (Emphasis in original) https://www.lereta.com/our-difference, accessed August 30, 2020.

32.     Lereta claims "[w]e work with over 25,000 tax collecting agencies nationwide to give you access to the most extensive and accurate real estate tax data. You save time, money, and receive the support you need to protect your portfolio assets."   https://www.lereta.com/tax-services-overview.

33.     Lereta specifically boasts that it obtains "24 month property tax payment history on all jurisdictions **displaying willingness to pay**." https://www.lereta.com/reverse-mortgage-services (emphasis added).

34.     While many vendors gather property records for the purpose of determining property values or title, that is not the reason, and certainly not the only reason, Lereta collects and sells its reports.

35.     Lereta expects that its reports may or will be used, at least in part, by lenders such as Champion for the purpose of evaluating credit and prepayment risks of new as well as existing credit obligations.

36.     Lereta's reports are thus "consumer reports" pursuant to 15 U.S.C. §§ 1681a(d) and 1681b(a)(3)(F).

37.     Before Lereta may issue such reports, it must obtain from users a certification of the purpose for the report and that the report will be used for no other purpose. *Id.* § 1681e(a). Lereta does not, violating the FCRA with each report it issues.

38.     Once Lereta chooses to issue consumer reports, the FCRA requires that it have in place reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b).

39.     Lereta has no such procedures in place, as it makes no effort to verify the tax-related information it reports.

40.     Lereta's search about Plaintiffs' tax history incorrectly determined that taxes on the Hill's property at 199 Meadow Lane, Peterstown, West Virginia had not been paid.

41.     This information was false and untrue.  The Plaintiffs' taxes were timely paid.

42.     Whatever source from which Lereta obtained the tax information about Plaintiffs' tax history, the online tax records that are available to anyone who bothers to look showed that Plaintiffs' taxes were timely paid and never delinquent.

43.     Discovery will show that Lereta repeats such mistakes over and over, because it has no procedures in place that concern the maximum possible accuracy of the information it reports.

44.     Such mistakes should be easily caught before such reports issue, as the online tax records are publicly available.

45.     Lereta's property tax record report was furnished to Champion Mortgage with this false information.

46.     The Lereta report to Champion was to determine whether Plaintiffs remained in compliance with the terms of their reverse mortgage.

47.     Believing the inaccurate information to be true, Champion Mortgage advised the Hills that they were delinquent and in default of their reverse mortgage.

48.     Champion explained that "[o]n March 7, 2019, we conducted a tax search on the property and it was determined the Year 2014 property taxes of $957.27 were delinquent."

49.     Champion acknowledged this was in error, but nonetheless persisted in billing the Hills because "it was determined there was a delinquent balance of $190.92 for the Year 2018 property taxes."

50.     This was in further error.

51.     Every month thereafter, Champion has written to Plaintiffs indicating they have a default balance and that their loan status is "Default."

52.     Plaintiffs had always paid their property taxes as due.

53.     Plaintiffs mailed a letter directly to Lereta in May 2020 requesting that Lereta reinvestigate its report to Champion.

54.     Lereta never responded to Plaintiffs' dispute and request that it reinvestigate its inaccurate report.

55.     In fact, even after learning of the mistake from Plaintiffs' dispute and from the filing of this lawsuit, Lereta was still unable to correct its error. It issued a second inaccurate report about Plaintiffs' property-tax status after this case was filed.

56.     Lereta has failed and refused to appropriately reinvestigate and to accurately report Plaintiffs' tax status.

57.     Defendant Lereta has failed and refused to perform a meaningful and searching inquiry into the substance of Plaintiffs' dispute and to accurately report Plaintiffs' creditworthiness relating to their willingness and ability to pay their obligations.

58.     Lereta prepared and published to third-parties multiple inaccurate consumer reports about Plaintiffs that contained the inaccurate, derogatory credit information.

59.     As the result of Lereta's conduct, Plaintiffs have suffered loss of credit standing with Champion, including their willingness to pay just debts, and the mental and emotional pain, anguish, humiliation, and embarrassment of fear of losing their home based upon an inaccurate report. Plaintiffs have also spent time and money to try to correct the inaccuracies that appear in their report.

### *Lereta Acted Willfully*

60.     The FCRA allows for a remedy for a "willful" violation.  A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007).  A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

61.     Proof of willfulness includes, for example, a failure to make the correction right away once the error is identified. *Dalton*, 257 F.3d at 418;  *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008). Further, a lack of any internal procedures to anticipate or prevent inaccuracy is willful. *Daugherty*, 701 F. App'x at 25.

62.     As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years.  The language of § 1681e(b) has not changed.  Defendant's

dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendant's "grave responsibilities" to ensure accuracy has not changed.

63.     Defendant knew or should have known of this FCRA history.

64.     These provisions have been part of the FCRA since it was enacted. There is more than ample authority from court decisions and regulators to which Lereta has access to permit it to bring its procedures into compliance.

65.     Yet, Lereta has not.

66.     Upon information and belief, Defendant has actual knowledge of the problems associated with its systematic, erroneous reporting, yet it deliberately chooses to ignore these problems because reviewing and/or crosschecking the data would reduce its bottom line.

67.     Defendant further is aware or should be aware that it violates the FCRA with every consumer report it sells because it sells them without requiring the user to certify the purpose for which it is purchasing the report.

68.     Such reporting violates Plaintiffs' and class members' privacy, as the FCRA demands that the sensitive information consumer reports contain be furnished only under specific circumstances. Lereta disregards these demands and sells consumer reports despite the strict protections for consumers the FCRA establishes.

69.     Defendant's procedures imposed on the Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

70.     At all times relevant to this Complaint, Defendant's conduct was willful and carried out in reckless disregard for consumers' rights under the FCRA. By example only and without limitation, Defendant's conduct was willful because it ran a risk of harm that was known or so

obvious it should have been known by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

## CLASS ACTION ALLEGATIONS

71.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Plaintiffs bring this action for themselves and on behalf of the following class and subclass:

### Impermissible Pull Class

All natural persons residing in the United States as to whom (a) a person or entity requested Tax Status Reporting information from Lereta, (b) within the two-year period preceding the filing of this action and during its pendency, and (c) as to whom Lereta failed to obtain a certification from the person or entity stating the purpose for requesting the consumer information and stating that the consumer information would not be used for any other purpose. Excluded from the class definition are any employees, officers, or directors of Lereta, any attorney appearing in this case, and any judge assigned to hear this action.

### West Virginia Impermissible Pull Subclass

All members of the Impermissible Pull Class who, at the time an entity requested Tax Status Reporting information from Lereta, had a West Virginia address. Excluded from the class definition are any employees, officers, or directors of Lereta, any attorney appearing in this case, and any judge assigned to hear this action.

### Inaccuracy Class

All natural persons residing in the United States as to whom (a) Lereta issued Tax Status Reporting information, (b) within the two-year period preceding the filing of this action and during its pendency, (c) where the information Lereta issued contained records of tax delinquency, and (d) the records of the person's taxing authority showed no delinquency. Excluded from the class definition are any employees, officers, or directors of Lereta, any attorney appearing in this case, and any judge assigned to hear this action.

### File Disclosure Request Class

All natural persons in the United States who (a) requested their file disclosure from Lereta, (b) within the two-year period preceding the filing of this action and during its pendency, and (c) to whom Lereta did not provide a file disclosure. Excluded from the class definition are any employees, officers, or directors of Lereta, any attorney appearing in this case, and any judge assigned to hear this action.

72.     **Numerosity – Fed. R. Civ. P. 23(a)(1).** The Plaintiffs incorporates their prior allegations and estimates that the Classes and Subclass are so numerous that joinder of all members is impractical. Discovery will show the Classes and Subclass exceed 100 consumers, and those consumers are sufficiently geographically dispersed as to make joinder impracticable.

73.     The exact number and identity of these persons is not known, but can be determined from the records maintained by Defendant. In many instances, Class Members are either unaware that claims exist or have sustained individual damages too small to justify the costs of bringing suit separately. Since Defendant employed uniform, failed systems across all reports it furnished, their conduct justifies this Class Action.

74.     **Commonality – Fed. R. Civ. P. 23(a)(2).** The questions of law and fact common to the claims of each Class Member overwhelmingly predominate over any question of law or fact affecting only individual members of the Classes. Questions of law and fact common to the Classes and Subclass include, but are not necessarily limited to, the following:

a.   Whether Defendant issued consumer reports without a reason to believe there was a permissible purpose;

b.   Whether Defendant issued a consumer report without obtaining the required certifications from users of the consumer reports;

c.   Whether Defendant had in place reasonable procedures designed to assure maximum possible accuracy of information it reports;

d.   Whether Defendant provided file disclosures to those consumers who requested them;

e.   Whether Defendant's practices were uniformly applied across all reports it issued;

      f.   Whether Defendant acted negligently or willfully;

      g.   The amount of statutory damages to award to each Class and Subclass member; and

      h.   The amount of punitive damages to award against Defendant.

75.    **Typicality – Fed. R. Civ. P. 23(a)(3).** The claim of Plaintiff is typical of the claims of the Classes and Subclass they seek to represent because at all times material to the allegations of this Class Action Complaint, Plaintiffs and the members of the Classes and Subclass were subject to the same policies, practices, and procedures and seek the same FCRA-based relief.

76.    Plaintiffs and the Classes and Subclass they seek to represent have sustained similar types of harm, and the members of the Classes and Subclass have claims that arise from an identical factual background and identical legal theories as do Plaintiffs'.

77.    The Plaintiffs' claims are typical of those of the Classes and Subclass—Defendant issued reports about them that were governed by the FCRA without obtaining the statutorily required certifications from those obtaining those reports. When Defendant issued the reports about Plaintiffs and Class Members, they were uniformly inaccurate because they showed delinquencies that the taxing authority did not. Lereta therefore had no reasonable procedures in place to assure the maximum possible accuracy of the information it reported.

78.    These processes and omissions were uniform and applied classwide, without regard to a particular transaction between Lereta and its customer or the particular Classes or Subclass member involved.

79.    The claims of Plaintiffs are typical of the claims of the Classes and Subclass they seek to represent because at all times material to the allegations of this Class Action Complaint,

Plaintiffs and the members of the Classes and Subclass they seek to represent were subject to the same policies, practices, and procedures and seek the same kind of relief.

80.     Plaintiffs and the Classes and Subclass they seek to represent have sustained similar types of damages, and the members of the Classes and Subclass have claims that arise from an identical factual background and identical legal theories.

81.     **Adequacy of Representation – Fed. R. Civ. P. 23(a)(4).** The Plaintiffs will fairly and adequately protect the interests of the Classes and Subclass. The Plaintiffs have retained Counsel experienced in handling FCRA class actions. Neither the Plaintiffs nor her Counsel has any interests that might cause them not to vigorously pursue this action. The Plaintiffs are aware of their responsibilities to the putative Classes and Subclass and have accepted such responsibilities.

82.     **Predominance and Superiority – Fed. R. Civ. P. 23(b).** Certification of the classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that:

a.   As alleged above, the questions of law or fact common to the members of the Classes and Subclass predominate over any questions affecting an individual member.  Each of the common facts and legal questions in the case overwhelms the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences of proof in the case.

b.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims are generally ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford to bring such claims individually. Further,

most consumers affected by the Defendant's FCRA violations would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues, in this case, would be a waste of judicial resources.  The issues at the core of this case are classwide and should be resolved at one time and with one set of proof. A win for one consumer would set the law for every similarly situated consumer.

## CLAIMS FOR RELIEF

### COUNT I – FAILURE TO REINVESTIGATE
#### (Individual Claim)

83.    Plaintiffs incorporate all of the preceding paragraphs by reference.

84.    Defendant Lereta is a "consumer reporting agency" pursuant to 15 U.S.C. § 1681a(f) because it assembles and/or evaluates property tax information it then reports to third parties, like Champion.

85.    Lereta specifically boasts that it obtains "24 month property tax payment history on all jurisdictions *displaying willingness to pay*." https://www.lereta.com/reverse-mortgage-services (emphasis added).

86.    Lereta collected the property tax information to be used, or expected to be used at least in part by Champion for the purpose of evaluating Plaintiffs' credit and prepayment risks of existing credit obligations and in response to Champion's legitimate business need for the information in connection with an account review and to ensure Plaintiffs continued to meet the terms of the account, thus preparing a "consumer report" pursuant to 15 U.S.C. § 1681a(d) and 15 U.S.C. § 1681b(a)(3)(F).

87.     Defendant Lereta gathered, assembled, and provided a consumer report to creditor Champion Mortgage to assess Plaintiffs willingness to pay taxes. Lereta therefore has a file disclosure to provide to Plaintiffs pursuant to 15 U.S.C. 1681g.

88.     Defendant failed to conduct a reasonable reinvestigation of the information in Plaintiffs' credit file after receiving actual notice of inaccuracies; failed to delete inaccurate information upon actual notice of inaccuracies; failed to maintain reasonable procedures with which to filter and verify disputed information in Plaintiffs' credit file; and relied upon verification from a source it has reason to know is unreliable, in violation of 15 U.S.C. § 1681i.

89.     Defendant's conduct, action, and inaction was willful, or, in the alternative, negligent.

90.     Plaintiffs were harmed by Defendant's conduct, action, and inaction.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a)  Appropriate statutory penalties for each violation of the FCRA;

(b)  Actual damages;

(c)  Punitive damages;

(d)  Reasonable attorney's fees and the costs of this litigation;

(e)  Pre-judgment and post-judgment interest at the legal rate;

(f)  Appropriate equitable relief, including the correction of Plaintiffs' credit report; and

(g)  Such other relief as the Court deems equitable, just, and proper.

## COUNT II – FAILURE TO ASSURE ACCURACY
### (Class Claim)

91.     Plaintiffs incorporates all of the preceding paragraphs by reference.

92.     Defendant Lereta failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files maintained and published concerning Plaintiffs and Class Members, in violation of 15 U.S.C. § 1681e(b).

93.     When Lereta obtains and reports tax information, it does nothing to confirm the accuracy of the information it reports. Such process violates Section 1681e(b)'s demand that Lereta have in place reasonable procedures designed to assure the maximum possible accuracy of the information Lereta reports.

94.     Defendant's conduct, action, and inaction was willful, as described above.

95.     Plaintiffs were harmed by Defendants' conduct, action, and inaction.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a)  Appropriate statutory penalties for each violation of the FCRA;

(b)  Statutory damages of between $100 and $1,000;

(c)  Punitive damages;

(d)  Reasonable attorney's fees and the costs of this litigation;

(e)  Pre-judgment and post-judgment interest at the legal rate;

(f)  Appropriate equitable relief, including the correction of Plaintiffs' credit score; and

(g)  Such other relief as the Court deems equitable, just, and proper.

**COUNT III – FAILURE TO PROVIDE FILE DISCLOSURES**
**(Class Claim)**

96.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

97.     Plaintiffs have requested their file from Lereta, which has refused to provide them.

98.     Discovery will show that this was no accident or mistake by Lereta—it fails to provide file disclosures as a matter of ordinary course and as a result of its established practices.

99.     Thus, Lereta fails as a routine practice to provide file disclosures to consumers who request them.

100.    This refusal prevents Plaintiffs and Class Members from at least knowing the information Lereta is reporting about them, as the FCRA expects, but also interferes with their resolving their inaccurate reporting issue with their mortgage servicer and continues to frustrate and scare Plaintiffs today.

101.    Pursuant to section 1681n of the FCRA, Defendant Lereta is liable for willfully failing to provide consumers such as Plaintiffs and Class Members, upon request, with all information in the consumers' file in violation of 15 U.S.C. § 1681g(a).

102.    Plaintiffs and Class Members were harmed by Defendant's conduct, action, and inaction.

**WHEREFORE**, Plaintiffs respectfully pray for the following relief:

(a) Appropriate statutory penalties for each violation of the FCRA as to themselves and Class Members;

(b) Punitive damages;

(c) Reasonable attorney's fees and the costs of this litigation;

(d) Pre-judgment and post-judgment interest at the legal rate;

(e) Appropriate equitable relief, including the correction of Plaintiffs' credit score; and

(f) Such other relief as the Court deems equitable, just, and proper.

## COUNT IV – IMPERMISSIBLY PROVIDING CONSUMER REPORTS
### (Class Claim)

103.    Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

104.    Section 1681e(a) demands that a consumer reporting agency like Lereta refrain from furnishing consumer reports unless it first obtains from the recipient a certification of the purpose for which the report will be used and that it will be used for no other purpose. 15 U.S.C. § 1681e(a).

105.    Despite these easy-to-follow mandates of the FCRA, Lereta violates it by selling reports to mortgage companies like Champion without obtaining the appropriate certifications before selling the reports.

106.    This certification requirement is meaningful and important, as it provides Lereta the only legal permission to furnish a consumer report to anyone. Without the certification, Lereta is forbidden from providing consumer reports.

107.    Lereta repeated its violations again and again, as to Plaintiffs and members of the putative Class.

108.    Pursuant to section 1681n of the FCRA, Defendant Lereta is liable for willfully failing obtain certifications of purpose from customers to whom it provided consumer reports such as those about Plaintiffs and Class Members, a violation of 15 U.S.C. § 1681e(a).

109.    Plaintiffs and Class Members were harmed by Defendant's conduct, action, and inaction.

**WHEREFORE**, Plaintiffs respectfully pray for the following relief:

      (a) Appropriate statutory penalties for each violation of the FCRA as to themselves and Class Members;

(b) Punitive damages;

(c) Reasonable attorney's fees and the costs of this litigation;

(d) Pre-judgment and post-judgment interest at the legal rate;

(e) Appropriate equitable relief, including the correction of Plaintiffs' credit score; and

(f) Such other relief as the Court deems equitable, just, and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

CONNIE HILL, individually and in her capacity as Executrix of the Estate of Donald Hill, *on behalf of themselves and all others similarly situated,*

By: /s/ Jason E. Causey
Jason E. Causey #9482
Bordas & Bordas, PLLC
1358 National Road
Wheeling, WV  26003
(304) 242-8410
jcausey@bordaslaw.com

Jed R. Nolan #10833
Nolan Consumer Law, PLLC
PO Box 654
Athens, WV 24712
(304) 207-0066
jednolan@gmail.com

Leonard A. Bennett, Admitted
   Pro Hac Vice
Craig Marchiando, Pro Hac Vice
   Pending
Consumer Litigation Associates, PC
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
lenbennett@clalegal.com

Eric J. Buckner #9578
Katz Kantor Stonestreet &

Buckner, PLLC
207 South Walker Street
Princeton, WV  24740
(304) 431-4050
ebuckner@kksblaw.com

*Co-Counsel for Plaintiff*